**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADAM LEE JANSSEN,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFERSON COUNTY, MO, et al.,<br><br>Defendants. | ) | Case No. 4:25-cv-01419-AGF |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the Amended Complaint of self-represented Plaintiff Adam Lee Janssen. ECF No. 6. The Court previously granted Plaintiff *in forma pauperis* status and reviewed his 42 U.S.C. § 1983 Complaint under 28 U.S.C. § 1915. ECF No. 5. Based on that review, the Court directed Plaintiff to file an Amended Complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned Plaintiff that his Amended Complaint would also be reviewed under § 1915. *Id.* at 12.

As discussed below, Plaintiff has sufficiently stated a claim of a violation of his First Amendment right to avoid retaliation as to Defendants Brenda Short, John Doe #1, and Christopher Rulo; a violation of his Fourteenth Amendment right to avoid punitive conditions of confinement as to Defendants Brenda Short and John Doe #1; a violation of his Fourteenth Amendment protection from excessive force as to Defendant Christopher Rulo; and a municipal liability violation under *Monell* against Defendant Jefferson County. However, Plaintiff fails to state a Fourteenth Amendment excessive force claim or any official capacity claims against Brenda Short. As such, the Court will partially dismiss the Amended Complaint and will order the Clerk to issue

process or cause process to be issued on the non-frivolous portions of the Amended Complaint. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Background**

Although Plaintiff was a pretrial detainee at the St. Charles County Jail when he initiated this action, the allegations of his Complaint pertain to a 2022 period of detention at the Jefferson County Jail in Hillsboro, Missouri. ECF No. 1 at 9. Plaintiff's initial Complaint was brought under 42 U.S.C. § 1983 against five (5) defendants associated with the Jefferson County Jail. His claims pertained to various incidents which occurred between January and April 2022 at the Jail, including allegations of excessive force, verbal threats, unnecessary placement in punitive suicide-cell conditions, being forced to attend a court hearing wearing a "green dress," denial of access to a Bible, and inability to file grievances. *Id.* at 9-15.

The Court reviewed the assertions of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2) and found multiple legal deficiencies and a failure to comply with the Federal Rules of Civil Procedure. ECF No. 5. However, because Plaintiff is self-represented, the Court allowed him to file an Amended Complaint to attempt to cure these pleading deficiencies. The Court provided Plaintiff with instructions to follow in the filing of his Amended Complaint, including directives on proper joinder of claims, the requirement that claims be pled in the form of short and plain statements, § 1983 personal liability requirements for each named defendant, and the requirements for pleading a claim against a County under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Id.* at 6-9.

**The Amended Complaint**

Plaintiff filed his Amended Complaint under 42 U.S.C. § 1983 against four (4) defendants associated with the Jefferson County Jail: (1) Jefferson County; (2) Brenda Short (Jail

administrator); (3) "John Doe #1" (supervisory correctional officer); and (4) Christopher Rulo (correctional officer). *Id.* at 1-4. The County and Short are named in their individual and official capacities. Doe and Rulo are named in their individual capacities only. *Id.* at 2-4.

Plaintiff asserts similar allegations as in his initial Complaint. Plaintiff alleges that on January 30, 2022, when he was being held as a pretrial detainee at the Jefferson County Jail, a non-defendant Jail staff member used excessive force on him. *Id.* at 5. After the incident, Plaintiff "attempted to file a grievance" with the Jail, complaining about the incident. At some point that same day, the Jail was put on lockdown but Plaintiff still "continued to request to file [a] complaint" through his cell's call box. He also "requested to see medical due to [his] injury from [the] excessive force." Plaintiff does not state what injuries he suffered from the incident. According to Plaintiff, his cell call box requests were met with verbal threats that "if he didn't stop using [the] call box there would be negative consequences." Plaintiff does state that he was able to use the Jail's digital kiosk "to request that a complaint and charges be filed" against the officer involved in the excessive-force incident. *Id.*

On the evening of the same date (January 30, 2022), Plaintiff reports that Defendant John Doe #1—the supervisory correctional officer on duty—moved Plaintiff to a suicide-watch cell even though Plaintiff did not request it and he "never made comments that he was going to harm himself [or] others." *Id.* at 6. Plaintiff details how he was removed from his cell, "escorted … to an area where he was stripped of his clothes, forced to squat and cough naked then given a green dress to wear without undergarments." During this time, Plaintiff asserts that Doe "made statements antagonizing Plaintiff about Suicide Watch preventing him from being able to use [the] phone or access the grievance kiosk." Plaintiff further alleges that Doe placed him on suicide

watch in retaliation for the exercise of his First Amendment rights, to punish him, and to make him fear further exercise of his rights. *Id.* at 7.

Plaintiff also alleges that Defendant Jail administrator Brenda Short "had control" over where detainees were housed, that she responded to and handled all grievance filings, and that she implemented policies and procedures. *Id.* at 7. Plaintiff states that Short's office was adjacent to the suicide-watch cells, that she walked by multiple times per day, and that she came to the window of his cell "numerous times" while he was on suicide watch. *Id.* at 6-7. Plaintiff told Short multiple times that he was not suicidal and requested to be moved. *Id.* at 8. Prior to a court date scheduled for Plaintiff, he "begged" Short for clothing to wear to Court. He also requested "proper clothing" from the officer escorting him to Court. That escorting officer informed Plaintiff that Short had "instructed him not to give [Plaintiff] clothes." Despite his requests, "Plaintiff had to attend court with genitals exposed in a green dress in public." *Id.* at 9. Furthermore, Plaintiff asserts that on multiple occasions Short antagonized him with comments about his placement in suicide watch being a result of his complaints, including stating that he should "stop filing complaints on [Jail] staff," that "this is what happens when you have your family call [to complain]," and that she hopes he "enjoy[s] court naked." *Id.* at 7. Plaintiff also alleges that Short threatened to "influence" his criminal case and threatened punishment if he continued to complain. *Id.* at 7-8. Plaintiff asserts that Short had "no legitimate governmental interest" in sending him to Court "indisposed in public and in front of his judge" and that these actions lacked a "penological purpose." *Id.* at 9. As such, Plaintiff asserts that sending him to Court dressed improperly was retaliation for the exercise of his rights and constitutes impermissible punishment of a pretrial detainee.

On March 22, 2022, two months after the alleged incident of excessive force, Plaintiff again requested to file a report with the sheriff's office about the incident. *Id.* Short denied the

grievance and less than a week later, Defendant correctional officer Christopher Rulo commented to Plaintiff that Short had made him aware of Plaintiff's ongoing requests to file criminal charges concerning the excessive force incident. *Id.* at 10. Soon after, Rulo came to Plaintiff's cell, handcuffed him behind his back, and walked him out of his cell to where he was facing a cinderblock wall. Rulo then warned Plaintiff to "start listening or he will sexually assault him." Next Rulo "place[d] his hand on the back of … plaintiff and slam[med] his face into the cinderblock wall." *Id.* Plaintiff states that he did not resist or create a situation requiring force to be used by Rulo. *Id.* at 11. He asserts that Rulo's statement was documented in a Prison Rape Elimination Act ("PREA") investigation, but he does not elaborate on the results of that investigation. *Id.*

Finally, according to Plaintiff, evidence in Defendants' possession and statements from witnesses will establish that the Jail has a "longstanding, widespread practice of using suicide cells as punishment and discipline upon pretrial detainees and inmates not requiring protection." *Id.* at 11. He further asserts that "policymaking officials" have been deliberately indifferent or tacitly authorized these actions. Finally, Plaintiff alleges that Short was delegated as the "final policymaker" by Jefferson County, in her position as Jail administrator, on the decisions to take such actions, which Plaintiff asserts violated his constitutional rights. *Id.* Plaintiff claims that Short's power, as the person handling all Jail grievances, further "shows her ratification" as "final policymaker" pertaining to Jail issues in Jefferson County. *Id.* at 12.

Based on these factual allegations, Plaintiff asserts six (6) legal claims for relief: (1) First Amendment retaliation against Short, Doe, and Rulo; (2) punitive conditions of confinement in violation of the Fourteenth Amendment against Short and Doe regarding placement a in suicide-watch cell; (3) punitive conditions of confinement in violation of the Fourteenth Amendment

against Short regarding attendance at Court without proper clothing; (4) excessive force in violation of the Fourteenth Amendment against Short and Rulo regarding Plaintiff's head being slammed into the wall; (5) *Monell* claim against Jefferson County regarding the Jail's use of suicide watch as punishment; and (6) *Monell* claim against Jefferson County regarding the unconstitutional actions of its "final policymaker" employee Short. *Id.* at 13-18.

As a result of these alleged violations, Plaintiff asserts injuries including being dazed and disoriented, pain and suffering, "post concussion syndrome[e]," ear ringing, blurred vision, headaches, dizziness, nightmares, stress, scar tissue, PTSD, fear of police, anxiety, hypervigilance, paranoid thoughts, sleep issues, loss of appetite, humiliation, reluctance to exercise constitutional rights, financial losses, and reputational harm. *Id.* at 10, 13-17, 20. In terms of relief, Plaintiff seeks declaratory relief, injunctive relief, and money damages. *Id.* at 21.

**Discussion**

Having carefully reviewed and liberally construed Plaintiff's allegations, the Court finds that the Amended Complaint survives initial review under § 1915(e)(2)(B) as to Plaintiff's individual-capacity claims under the First Amendment against Defendants Brenda Short, John Doe #1, and Christopher Rulo regarding retaliation; under the Fourteenth Amendment against Defendants Brenda Short and John Doe #1 regarding conditions of confinement; and under the Fourteenth Amendment against Defendant Christopher Rulo regarding excessive force. Plaintiff has also sufficiently pled a municipal liability claim under *Monell* against Defendant Jefferson County. However, all other claims will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

## I. First Amendment Retaliation

The right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). To state a claim for First Amendment retaliation, a plaintiff must assert that: (1) he engaged in a protected activity, (2) defendants took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (internal citation omitted). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). As such, "actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Gonzalez*, 971 F.3d at 745 (citing *Nelson*, 603 F.3d at 450).

At this early stage of pleading, the Court finds that Plaintiff has sufficiently alleged facts to state a First Amendment retaliation claim against Defendants Brenda Short, John Doe #1, and Christopher Rulo. Plaintiff states that he filed many grievances complaining about the conditions of confinement at Jefferson County Jail. He further alleges that correctional officer Doe moved him to a suicide-watch cell—despite his lack of need for such protection—while making "statements antagonizing [him] about Suicide Watch preventing him from being able to use [the] phone or access the grievance kiosk." ECF No. 6 at 6. Furthermore, Plaintiff alleges that Jail administrator Short antagonized him with comments about his placement in suicide watch being a result of his complaints, including stating that he should "stop filing complaints on [Jail] staff," that "this is what happens when you have your family call [to complain]," and threatening punishment if he continued to complain. *Id.* at 7-8. Finally, as to correctional officer Rulo,

Plaintiff asserts that Rulo physically assaulted him and threatened him with sexual assault after Rulo informed him that he knew about his complaints to Short and warned him to listen. *Id.* at 10-11. Plaintiff has provided enough facts to suggest that these alleged adverse actions were taken in retaliation for his grievance complaints and are therefore actionable under § 1983.

The Clerk of Court will be directed to issue process on this claim against Defendants Brenda Short and Christopher Rulo, in their individual capacities. Service of process cannot be effected upon the fictitious Defendant John Doe #1. However, the discovery process will begin after this Court's issuance of a Case Management Order, and Plaintiff will have the opportunity to obtain information permitting him to identify the fictitious Defendant. Plaintiff will then have the opportunity to file a motion for substitution of party to properly identify the Defendant's name and address for service.

**II. Conditions of Confinement in violation of the Fourteenth Amendment**

The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims concerning their conditions of confinement. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). According to the United States Supreme Court, the government may detain defendants prior to trial but the conditions of confinement at the detention facility cannot "amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. The Court described two ways to determine whether the conditions rise to the level of punishment. A plaintiff could demonstrate that the conditions of confinement were intentionally punitive. Alternatively, if no intent to punish was expressed, a plaintiff can show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id.* at 538-39.

Here, Plaintiff has sufficiently alleged facts for his Fourteenth Amendment conditions of confinement claims against Defendants Short and John Doe #1 to survive initial review under § 1915(e)(2)(B). Plaintiff asserts that his placement in a suicide-watch cell and his Court hearing without proper clothing were not for his own safety and protection from self-harm but were intended to punish him for complaints about Jail staff. Not only does he allege that these actions were punitive, but he also asserts that they lacked any reasonable relation to a legitimate governmental purpose. This is sufficient to assert a violation of the Fourteenth Amendment.

The Clerk of Court will be directed to issue process on this claim against Defendant Brenda Short, in her individual capacity. Service of process cannot be effected upon the fictitious Defendant John Doe #1. However, the discovery process will begin after this Court's issuance of a Case Management Order, and Plaintiff will have the opportunity to obtain information permitting him to identify the fictitious Defendant. Plaintiff will then have the opportunity to file a motion for substitution of party to properly identify the Defendant's name and address for service.

## III. Excessive Force in violation of the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment also protects pretrial detainees from "the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). In order to prevail on an excessive force claim, a plaintiff must show that a defendant purposely or knowingly used objectively unreasonable force. *Id.* "Whether the application of force is unreasonable turns on the facts and circumstances of each particular case." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (internal quotations and citations omitted). "Factors relevant to assessing the objective reasonableness of force used by officers include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the

officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (citing *Kingsley*, 135 S. Ct. at 2473). Furthermore, analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014).

Here, Plaintiff asserts that Defendant Christopher Rulo handcuffed him behind his back, walked him to a cinderblock wall, threatened him with sexual assault, and slammed his face into the wall while he was not resisting nor creating a situation that required a use of force. ECF No. 6 at 10-11. These facts are enough to establish that Defendant Rulo was purposely or knowingly using objectively unreasonable force. The Clerk of Court will be directed to issue process on this claim against Defendant Christopher Rulo, in his individual capacity.

However, Plaintiff also asserts this claim against Defendant Brenda Short, arguing that she is "jointly responsible" and she encouraged the use of force by Rulo. *Id.* at 16. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

A plaintiff may, under a theory of direct liability, maintain a civil rights claim against a prison official whose failure to train, supervise, direct, or control actions of a subordinate is such that it constitutes deliberate indifference. *Moyers v. Buescher*, 806 F.Supp. 218, 220 (E.D. Mo.

1992). "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.' " *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)); *see also Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

In this case, Short cannot be held liable under § 1983 for the actions of Rulo and Plaintiff has not pled sufficient facts to suggest that Short directly participated in Rulo's use of force or that she failed to properly train or supervise Rulo. Therefore, Plaintiff's Fourteenth Amendment excessive force claim against Brenda Short will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

## IV. Municipal Liability based on *Monell*

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove municipal liability.

First, "policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible … for

establishing final policy with respect to the subject matter in question") (internal quotations omitted). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.*

Alternatively, in order to establish a claim of liability based on "custom," a plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, to demonstrate deliberate indifference for purposes of failure to train, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Based on the facts alleged in the Amended Complaint against Defendant Jefferson County, the Court finds that Plaintiff has sufficiently alleged a claim of municipal liability, based on an unconstitutional custom, to survive initial review. Plaintiff alleges that evidence will establish that the Jail has a "longstanding, widespread practice of using suicide cells as punishment and discipline upon pretrial detainees and inmates not requiring protection." ECF No. 6 at 11. He

further asserts that "policymaking officials" have been deliberately indifferent or tacitly authorized this custom. Finally, Plaintiff pleads sufficient facts to suggest that his unnecessary placement on suicide watch and the confiscation of his clothing violated his constitutional rights. *Id.* As such, Plaintiff has alleged the elements of an unconstitutional custom as needed to state a municipal liability claim under *Monell* against Defendant Jefferson County. The Clerk of Court will be directed to issue process on this claim.

Additionally, although Plaintiff specifically asserts his *Monell* claim against Jefferson County, he also brings this suit against Defendant Jail administrator Brenda Short in her official capacity. However, Plaintiff's official capacity claim against Short is duplicative of his claim against Defendant Jefferson County. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because "a suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," the official capacity claims against Brenda Short will be dismissed as duplicative or redundant. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). *See also Bonenberger v. City of St. Louis*, No. 4:16CV788 PLC, 2016 WL 5341113, at * 2 (E.D. Mo. Sept. 23, 2016); *Coller v. State of Mo., Dep't of Econ. Dev.*, 965 F. Supp. 1270, 1275 (W.D. Mo. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Amended Complaint as to Plaintiff's Fourteenth Amendment excessive force claim against Defendant Brenda Short because the Amended Complaint fails to state a claim upon which relief may be granted as to this claim. Plaintiff's Fourteenth Amendment excessive force claim

against Defendant Brenda Short is **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Amended Complaint as to Plaintiff's official-capacity claims against Defendant Brenda Short because the Amended Complaint fails to state a claim upon which relief may be granted as to these claims. Plaintiff's official-capacity claims against Defendant Brenda Short are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon Defendant Brenda Short, in her individual capacity, as to Plaintiff's First Amendment retaliation claim and his Fourteenth Amendment conditions of confinement claim. Defendant Brenda Short shall be personally served by issuance of summons and service by the U.S. Marshals Service at the Jefferson County Sheriff's Office, 510 First Street, Hillsboro, MO 63050.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon Defendant Christopher Rulo, in his individual capacity, as to Plaintiff's First Amendment retaliation claim and his Fourteenth Amendment excessive force claim. Defendant Christopher Rulo shall be personally served by issuance of summons and service by the U.S. Marshals Service at the Jefferson County Sheriff's Office, 510 First Street, Hillsboro, MO 63050.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon Defendant Jefferson County as to Plaintiff's municipal liability claim under *Monell*. Defendant Jefferson County shall be served by issuance of summons and service by the U.S. Marshals Service at the Jefferson County Counselor Office, 400 First Street, Justice Center, Hillsboro, MO 63050.

**IT IS FURTHER ORDERED** that an appeal of this partial dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 15th day of October, 2026.

Audrey G. Fleissig

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE